ORAMA ET AL., RESPONDENTS, *v.* OYANGUREN, APPELLANT.

APPEAL from the District Court of San Juan, Section 1.

No. 937.—Decided June 24, 1913.

NATURAL CHILDREN—ACTION FOR ACKNOWLEDGMENT—PERSONAL ACTION.—An action for acknowledgment brought by a natural child is of a personal character and should be governed by the laws of the country of the natural child.

ID. — ACTION FOR ACKNOWLEDGMENT — NON-RESIDENT DEFENDANTS — JURISDIC-·TION.—The general rule that a court acquires no jurisdiction over non-resident defendants in personal actions unless they have been summoned personally within the State or possess property therein which has been attached is not applicable to an action for acknowledgment brought by a natural child. The district courts of Porto Rico acquire jurisdiction in such cases over non· resident defendants although they have not been summoned personally within the State or possess property therein.

ID.—ACTION FOR ACKNOWLEDGMENT—COMPLAINT—ALLEGATIONS.—In accordance with section 189 of the Revised Civil Code, which was in force in 1903 when the plaintiffs were born, the allegation, of the complaint that their parents lived in concubinage both at the time of their birth and conception is a pertinent allegation.

ID.—ACTION FOR ACKNOWLEDGMENT—COMPLAINT—ALLEGATIONS.—The allegation of a complaint that the father of the plaintiffs had acknowledged them on various occasions relates to the acts of acknowledgment performed by the father and is not inconsistent with ·the other allegation that he had never acknowledged them legally as his natural children. The signification of the second allegation is that the plaintiffs had not been acknowledged in such a solemn and authentic manner as to obviate the necessity of their bringing this action.

ID.—EVIDENCE—CERTIFICATES OF BIRTH—DISCREPANCIES.—The trial court did not err in admitting certified copies of the birth certificates of Ana Luisa and Ana Teresa Mérida on the condition that it be proven (as was done later) that the said certificates referred to the plaintiffs, Ana Luisa and Ana Teresa Orama.

ID.—AMENDING COMPLAINT—EVIDENCE.—The plaintiffs alleged in their complaint that their father had deposited money for their account in the Banco Territorial y Agrícola on June 18, 1910, and August 7, 1911, and to prove this they offered in evidence the bank passbook, which was admitted without objection, according to which the last entry was made on May 23, 1911. The court granted said parties leave to amend the complaint by substituting the latter date for that of August 7th. It was held that the court did not err in

allowing such amendment and that no prejudice was caused thereby to the adverse party, who neither referred thereto at the trial nor asked for a reasonable time within which to present evidence to rebut the amendment.

ID.—RES JUDICATA—ACTION FOR ACKNOWLEDGMENT—FINAL JUDGMENT.—A final judgment rendered in an action of filiation is no bar to the institution of another similar action between the same parties when the latter is based on acts of acknowledgment performed by the father subsequent to the rendition of the judgment in the original action.

ID.—RES JUDICATA—FINAL JUDGMENT.—A judgment rendered in an action is conclusive as regards the issues joined, but is not *res judicata* in another suit of the same nature between the same parties based on different facts which did not exist when the first action was brought.

ID.—ACTION FOR ACKNOWLEDGMENT—EDUCATION AND SUPPORT—EVIDENCE.—According to the provisions of paragraph 2 of section 189 of the Revised Civil Code, the evidence introduced in an action of filiation cannot be deemed insufficient merely because although evidence was introduced to show that the father supported the children none was submitted to prove that he educated them, when the proof of the acts of acknowledgment on the part of the father is sufficient to establish the acknowledgment.

The facts are stated in the opinion.

*Mr. Antonio Sarmiento* for appellant.

*Mr. Eugenio Benítez Castaño* for respondents.

MR. JUSTICE ALDREY delivered the opinion of the court.

This is an appeal taken by Margarita Oyanguren from a judgment of the District Court of San Juan, Section 1, entered on October 12, 1912, decreeing that the plaintiffs, Ana Luisa and Ana Teresa Orama, are the acknowledged natural children of Nicolás Oyanguren with the rights corresponding to such status.

The defendant and appellant demurred to the complaint on the grounds that the court had no jurisdiction over her person and. in case this ground should be overruled, that the complaint is uncertain. The demurrer was overruled by the court and this decision is the basis of the first two errors on which the appellant relies in the appeal. A motion was made afterwards to strike out certain allegations of the complaint, one of which the court refused to strike out and this ruling is considered erroneous by the appellant and assigned as her third ground of appeal. The fourth and fifth errors alleged refer to the improper admission of evidence by the court at

the trial and the permission granted the plaintiffs during the trial to amend the complaint. The last two assignments of error directly attack the judgment in that it overrules the plea of *res judicata* and is not supported by the evidence.

The complaint alleges that the plaintiffs, who were born on this Island, were acknowledged as his natural children by acts performed here by Nicolás Oyanguren, and .they pray that the court so decree granting them all other rights conferred by the law in force at the time of the death of their father. The complaint is against Margarita Oyanguren as the heiress of her father, Nicolás Oyanguren. She resides in Spain and her domicile is unknown. On the ground that the complaint does not allege that the appellant possesses property in Porto Rico and that no attachment has been levied here on property belonging to her, the appellant maintains that for the aforesaid reasons and as the complaint sets up a personal action, the court had no jurisdiction over her person in the present case.

There is no doubt that the action which may be brought by a child to secure by means of evidence a decree designating his natural father, is a personal right of his, therefore when the child is in possession of such right it should be governed by the law under which it was acquired and all matters concerning the status of the person should be governed by the law of the country of the person who brings the action. The civil status of citizens is governed entirely by the laws of their own country and can be determined only pursuant thereto. Consequently, although it is a general rule that a court does not acquire jurisdiction over non-residents in personal actions unless they have been summoned personally within the State or possess property therein which has been attached, nevertheless said general rule cannot be applied to cases which involve the civil status of the individual, within which is included an action of filiation, because it being a right originating by conception and birth such right cannot be subjected to the contingency that the alleged father or the

legal representatives of his personality may have absented themselves from the country of the individual entitled to acknowledgment, considering that such right is not recognized in all countries and that in some countries evidence of acknowledgment . is not admitted for the reason that it is deemed contrary to public order and good custom as there understood. In this connection the Supreme Court of· the United States in the case of *Pennoyer* v. *Neff,* 95 U. S., 714, said:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do·not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without .redress.''

Therefore, we may conclude by saying that the courts of the country of a person who seeks to establish his civil status have jurisdiction over non-resident defendants, although they may not have been summoned personally therein nor possess property therein, for which reason the lower court did not commit the first error alleged by the appellant.

The second error assigned is that the court overruled the plea that the complaint was uncertain notwithstanding the

fact that while one of the allegations thereof is that on various occasions and before several people Nicolás Oyanguren acknowledged that he was the father of the plaintiffs, another allegation says that Oyanguren had never legally acknowledged them to be his natural children. According to our understanding of the complaint the first allegation sets up the acts of acknowledgment performed by the father and alleged by the plaintiffs as a basis for the decree prayed for from the court, while the other alleges only that the plaintiffs have not been acknowledged in a valid and effective manner; that is, that the acknowledgment is not witnessed in any authentic and effective document in such a way as to obviate the necessity of their resorting to a court to obtain a judicial declaration of their status as such natural children. For these reasons we do not consider the complaint uncertain, as contended by the appellant.

The refusal of the court to strike out certain parts of the complaint is alleged as a basis for the third assignment of error herein. The third and fourth allegations of the complaint read as follows:

"3d. That *both at the time of the birth* and at the time of the conception of the plaintiffs, Nicolás Oyanguren was a widower and Fabiana Orama was single and they were living in concubinage in the house of Oyanguren, during which concubinage Fabiana Orama conceived and gave birth to the plaintiffs.

4th. That *the mother of the plaintiffs died six years ago and subsequent to her death and more particularly in the years 1910 and 1911* Nicolás Oyanguren acknowledged that he was the father of the plaintiffs on several occasions and before various persons."

The defendant prayed the trial court to strike out the words which we have italicized on the ground that they were impertinent, and it is contended here that this is true in regard to the first, because, as it is alleged in the complaint that Nicolás Oyanguren and Fabiana Orama were respectively widower and single at the time of the conception of the plaintiffs and also that they were living in concubinage

at that time, it was impertinent to allege that these same facts existed at the time of their birth; and in regard to the second, because it sought to anticipate the plea of *res judicata* which might be entered by the plaintiffs.

In regard to the first point, we will say that the plaintiffs, who are twins, having been born in the year 1903, when section 189 of the Revised Civil Code was in force, which provides that a father is obliged to recognize his illegitimate child, among other cases, when the mother was known to have lived in concubinage with the father at the time of the pregnancy or birth of the child, they had the right to allege, as they did, not only that their parents lived in concubinage when they were conceived, but that they so lived at the time of their birth.

Though the language of the fourth clause might be given the meaning attributed thereto by the appellant, still such meaning does not appear clearly from a perusal of the complaint, but it would seem rather to indicate the dates on which the acts of acknowledgment by the father took place.

In the title of the complaint in this case Ana Luisa and Ana Teresa Orama appear as plaintiffs, and during the trial their attorney offered as evidence certified copies of the birth certificate of Ana Luisa and Ana Teresa Mérida and the defendant objected to their admission on the ground that the names did not coincide with the Christian and surnames of the plaintiffs. Notwithstanding this, the court admitted the same on condition that it be proven that they refer to the plaintiffs, to which ruling of the court the appellant excepted; and she now contends, as a fourth ground of the appeal, that this ruling of the court was an error.

Although it would have been more proper that the certificate should have been proven to refer to the plaintiffs (which was afterwards proven) before they were admitted in evidence, nevertheless we cannot say that the action of the lower court violated any principles of procedure or was prejudicial to the rights of the appellant, because if the said proof

had not been presented later and it had resulted that the certificates were not pertinent and admissible, the judge of the court could have freed himself easily from the impressions produced by such impertinent evidence, therefore no fundamental error was committed by the lower court. *Rivera* v. *Días, ante* p. 524.

The plaintiffs alleged that Nicolás Oyanguren had deposited money in the Banco Territorial y Agrícola for their account on June 18, 1910, and August 7, 1911, and to prove this they offered in evidence the bank passbook, which was admitted in evidence without objection. When, however, the defendant endeavored to prove that Nicolás Oyanguren could not have made a deposit on August 7, 1911, because he was not in Porto Rico on that date, the plaintiffs moved the court for permission to amend said allegation to conform to the contents of the said bank book by changing August 7, 1911, to May 23 of the same year, which is the date on which the last deposit entry appears in the book. The court granted the permission and the appellant excepted on the ground that the book from which the correction was taken had been at the disposal of the plaintiffs from the time they brought the action and even before, for which reason it was now too late to amend the complaint. This is the exception which serves as a basis for the fifth assignment of errors in this appeal, the appellant adding now that the amendment prejudiced her rights, as she was unable to offer evidence against this new date as she had done against the previous one. If the appellant believed that the amendment granted by the court would prejudice her rights, as now alleged for the first time, she should have asked the court to grant her a reasonable time within which to attack this new allegation, for although the court may grant leave to amend during the trial so that the allegations of the complaint may conform to the evidence, this should never be done in such a manner as to injure the adverse party. But as this reason was not given at the time the exception was taken, the court could not presume that

such ground existed, inasmuch as it is the duty of the parties to state to the court all the grounds on which they take exception, and these are those which the court considers and decides, because it should presume that any other ground which might exist had been abandoned. The exception was not really well taken on the ground which the appellant stated in the lower court because the object of the amendment granted was to adjust the complaint to evidence admitted without objection. It only corrected a simple error of dates and the mere fact that said error might have been discovered earlier is not sufficient ground for refusing the amendment requested.

Did the court improperly overrule the plea of *res judicata,* as is contended by the appellant in the sixth ground of appeal? In deciding this question we should state as facts that the complaint from which this appeal originated establishes clearly an action of filiation based on acts performed after the death of Fabiana Orama and more particularly during the years 1910 and 1911, and that all the evidence referred to acts of acknowledgment done on said dates. It is also shown from the records that during the year 1905 an action was brought in the District Court of San Juan against Nicolás Oyanguren, in which Fabiana Orama alleged in her own right and as guardian of her daughters, Ana Teresa and Ana Luisa, that on September 27, 1902, she was employed as cook by the defendant, Nicolás Oyanguren, and that at the request of the latter she had carnal intercourse with him, as a result of which she became pregnant and gave birth to twins on June 27, 1903; that the defendant gave her money on different occasions for the support of said children but later absolutely refused to give her any sum for that purpose and also refused to acknowledge them as his children, thus failing to comply with the promise made to the mother and to fulfil his duty as father of the children. The complaint concluded with the prayer that a decree issue acknowledging the two children to be the daughters of the defendant. After considering the

allegations, the evidence and the arguments of both parties, judgment was rendered against the plaintiff on April 25, 1905.

The appellant contends that this case is *res judicata* because there exist the requirements of identity of persons, things, cause and capacity as litigants, inasmuch as the complaint of 1905 established an action of filiation or acknowledgment of the children, Ana Luisa and Ana Teresa Orama, and, having been dismissed, it has been decided already that they are not the acknowledged children of Nicolás Oyanguren and this question cannot be decided again in the present action, which also has for its object a declaration of filiation of the plaintiffs as to Nicolás Oyanguren, represented now by his heiress.

In the case of *González* v. *Méndez,* 15 P. R. R., 682, we discussed at length the grounds for the presumption of *res judicata* both under the old as well as under the new law and the reason for the attention which should be given to a question already judicially decided, for which reason we need not repeat these details here. We will quote and amplify some paragraphs and citations from that case because they are pertinent to the question to be decided here, but before doing so we will say that it is our opinion that although the two judgments decide the same cause of action, if the second is based on facts entirely distinct from and subsequent to those on which the first is based, it cannot be held that the first judgment bars a relitigation of the same cause of action. We cannot agree with the appellant that when a person brings an action of filiation and is defeated he is barred from bringing a second action based on acts which occurred after the first judgment had been rendered; therefore if Ana Luisa and Ana Teresa Orama base their action on the fact that after the rendition of the first judgment declaring that the defendant, Nicolás Oyanguren, had not acknowledged them as his children he had committed acts showing such acknowledgment, they are not barred by the first judgment from bringing their action. The reason is manifest: the basis of

the prayer is different, the first judgment having decided that the father had not performed any act indicating the acknowledgment of said children up to that time and the second judgment being based on subsequent acts of the father.

In the case cited *supra* this court sustained the plea of *res judicata* because the ground of nullity alleged in the second complaint existed when the first complaint was filed, although the plaintiff did not take advantage of it; because the defendants in the first suit had reason to believe that they would not be molested again regarding the validity of their title on new grounds having, however, the same end in view as the first complaint and which could have been alleged before as they were known when the first action was filed, and because, although the basis of the prayer was different in the second, it was known when the first action was brought.

The judgment of the Supreme Court of Spain of November 18, 1903, which was cited in that case, says that there exists a presumption of *res judicata* when both actions are brought with the same object by alleging the same grounds and by basing the claim on allegations which make the condition of the parties and the results sought identical in relation to the title claimed. The judgment of the Supreme Court of Spain of September 28, 1887, says that "the doctrine has been laid down repeatedly by the Supreme Court that when an action is terminated by an executory judgment and a new suit is brought for the same thing but with a different basis for the prayer, the doctrine of *res judicata* is not disregarded by the rendition of a judgment in the second action against the successful litigant in the first."

And in a judgment of the same court of March 14, 1908, it is stated that although grounds of nullity had been alleged in the second action which were not invoked in the first action, they were inadmissible because the causes or grounds of nullity alleged afterwards were known when the first action was brought.

The doctrine of *res judicata* is alike both in Spanish and

in American law, for which reason the rules established by the latter are applicable to the present case, although it is governed by the Revised Civil Code which is taken from the Spanish Civil Code.

In American law it has been held that the estoppel of a judgment cannot be extended beyond the particular facts on which it was based; it determines only such points or questions as are sufficient to sustain the legal conclusion of the judgment and extends only to the facts in issue as they existed at the time the judgment was rendered and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants. 23 Cyc., 1290, 1291. The American doctrine agrees with the judgment of the Spanish court which we have cited, holding the rule to be that a judgment is conclusive not only upon the question actually contested and determined, but upon all matters which might have been litigated and decided in that suit. 23 Cyc., 1295. On page 1299 of the same volume it is stated that the first judgment will not be an estoppel to a second suit where the question in the second suit, although similar to that in the first, grows out of different facts. In the case of *Wagner* v. *Wagner,* 104 Cal., 293, 37 Pac. Rep., 935, it was decided that when the ground alleged was the wilful negligence of the husband to provide the necessary resources, which neglect, according to the statute, should continue for one year, the dismissal of the complaint is not a bar to a subsequent action based on the continued neglect of the husband for a year after that judgment. In the case of *Farquar* v. *Farquar,* 25 Pac. Rep., 146, it was held that a judgment between the same parties for the same cause is a bar to a reexamination of the same facts, but when new facts have occurred after the first judgment the plaintiff has the right to a judgment on those facts.

We are, then, sustained in our opinion hereinbefore expressed that the judgment rendered against the plaintiffs in

the first suit in this case is not *res judicata* in the second suit because the action arises from facts which occurred after the first judgment and no facts are considered which existed or could exist at the time of the rendition of the first judgment.

There now remains for consideration the seventh assignment of error alleged by the appellant, which is that the evidence was not sufficient to support the judgment.

The appellant maintains that section 189, subdivision 2, of the Revised Civil Code, which is applicable to the case at bar because it was in force when the plaintiffs were born, exacts that the father not only must have looked after the education of his legitimate children but also must have supported them, and that if there is any proof of the second requisite there is absolutely none in regard to the first.

It is not necessary for us to consider this aspect of the question because, as we shall see, in the present case the judgment is not based solely on the fact that the defendant had supported the plaintiffs as their father, but there was other evidence tending to prove that in private conversations he had acknowledged them as his daughters. In point of fact, shortly after the birth of the children their mother died and they were charitably taken care of by Leocadio Martínez. Subsequently, when Dr. Rafael del Valle learned of the lamentable financial situation of said children after the action had been brought by the mother, Fabiana Orama, he endeavored to persuade his friend, Nicolás Oyanguren, to furnish them pecuniary resources, and during their conversations Nicolás Oyanguren acknowledged on various occasions to del Valle that they were his daughters and agreed to provide them with money for their necessities. With this object in view he sent for Leocadio Martínez and told him that he desired to deposit a sum of money in the bank for the support of said children who were his daughters and they went to the Banco Territorial y Agrícola together on two occasions and money was deposited in the name of Martínez. It is true that the defendant offered in evidence the testimony of sev-

eral friends of Oyanguren to the effect that they had never heard him refer to these children, but this negative evidence cannot overcome the testimony of Dr. del Valle and Leocadio Martínez. One of the children testified also that on certain occasions they visited Nicolás Oyanguren and asked for a father's blessing, which he gave them, and although this witness testified that her mother had instructed her to ask for the blessing in that manner, which seems to us very natural, he never objected to their doing so. Taking the evidence as a whole, we are of the opinion that Nicolás Oyanguren privately acknowledged that the plaintiffs were his children.

It is true that when the first suit was brought the defendant not only contested the claim of paternity but obtained a judgment in his favor, but this would not prevent a subsequent change of conduct as his position in the first place was due, as he himself told del Valle, to his annoyance at having the relations he sustained with plaintiffs' mother made public in the courts. Therefore, in spite of his first denial of that fact we are of the opinion that the evidence in this case is sufficient to support the finding that the plaintiffs were acknowledged by the defendant as his children and supported by him as such, consequently the lower court did not commit the error alleged in the seventh ground of the appeal.

The judgment should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and del Toro concurred.